324-0133 Exchange Motors, Inc. and Illinois Corporation Appellant Cross Appellee v. Jessica Impson Appellee Cross Appellant You may proceed. Thank you. May it please the Court, and also to Council, this is an appeal from an arbitration motion, as well as from the Circuit Court's denial of our motion, Exchange Motors, Inc.'s motion to vacate and or modify the arbitration award based upon the very clear standard under Illinois law, which is clear and convincing evidence of gross error and manifest disregard of the law on the face of the arbitration agreement. What we have argued is that back Council, I have a preliminary question, a very preliminary question. We have the report of proceedings from the trial court, but we don't have any record of the testimony and the evidence that was presented at the arbitration. So it makes it difficult for us to find that gross error that is required for an arbitration reversal without that record. Thank you, Your Honor. Actually, the arbitration award actually spells out everybody's testimony and the evidence that the arbitrator actually took, considered, and she put her findings all on the arbitration award. Again, I'm limited to what's on the face of the arbitration award. And what's on the face of the arbitration award, we are arguing that it is clear, by clear and convincing evidence, it is in gross error. And what we have argued, and it's all there in the arbitration award, both the interim and the final, is that there is no injury. There is no damage. In fact, the arbitrator's specific findings herself stated there is no injury and there is no damage. Now I think that what was going on, I can tell from reading the award that she had to get around the as-is language. There was no way to get around it because we had it in our documents. It was testified to. The claimant herself, the defendant herself, even said, I signed those documents and it's clear as-is. So under Illinois law, whether you go through the regular traditional implied warranty of merchantability or now the 2017 amendment to 2L, which gives us a very limited implied warranty of merchantability based on power train component damage, none of that existed. None. From the beginning of the award to the end of the award with the testimony that was elicited and by the direct findings of the arbitrator herself, there was no damage ever found, ever proved, or produced at the time of the arbitration that would ever trigger a violation of the Consumer Fraud Act under 2L. In fact, if you go to the end of her award, you can see that very clearly because she says, okay, now after two and a half years, because this allegedly happened in March of 2021 and our arbitration was in May of 2023. So after two and a half years, I want you to go out and find some damage. And the arbitrator said, you have 60 days, respondent or defendant, to give the car to my clients to examine and to find damage. None was found during the arbitration. None was proven during the arbitration. What we have argued in our brief is if I'm now given an award that says that my client violated 2L of the Consumer Fraud Act, well, I have to have a violation. Where's the damage? None was ever produced. None was ever proven. There was evidence that was not included in the arbitration, correct? Correct. Correct. Correct. There was nothing there. I presume that she testified as to the car not working properly or someone testified as to that. That's what she testified to, but she couldn't substantiate it because from the beginning, that's the record that we have, is actually from the beginning, from March 12th of 2021, my clients were never given an opportunity to inspect the vehicle to even confirm that there was a damage, any damage. During the arbitration, none was ever substantiated. And then after the arbitration, she was given 60 days to give the car over to us to inspect to find any damage. Again, nothing was ever given. Nothing was ever produced. So weren't you ordered to pick up the car? No. Okay. She was ordered to produce the car. In fact, we sent an email to client, I'm sorry, to a plaintiff at that time, Ms. Ibsen. Okay. Well, we disagree with the award, but we have to abide by it. Bring over the car. Nothing. So the arbitrator did not order you to tow the car for her once she made it available to you? No, Your Honor. And that's actually very clear in arbitration award. And that's why I reached out to counsel for the plaintiff, I'm sorry, well, the claimant, sorry. And I said, okay, produce the vehicle. We have 60 days. We disagree with that award, with that finding, but we're gonna abide by it. Please produce it. You have 60 days. 60 days came and went, and we never got it. So what we have, to go back to Justice Albrecht's question, we now have a record that is very clear from before the arbitration, during the arbitration, and after the arbitration, there is no damage. Mr. Papoutsis, so then you're treating the order that was entered by the arbitration judge, in fact, as a bystander's report? Yes, Your Honor. Everything's there. Everything's in there. There was nothing for me to add, because while, again, while I disagree with the conclusion, with the findings, the arbitrator actually listed everything that was said and testified to and produced at the time of the arbitration. And so that's the basis of our entire argument is, and from what my understanding of Illinois law is, is that if I'm going to have a violation of the Consumer Fraud Act, I have to have a violation. Where is the violation? And in fact, the arbitrator even goes further and says to the claimant, Ms. Impson, you violated the Consumer Fraud Act because at the very beginning, you should have given the car over to my clients to inspect, do a reasonable inspection. So you violated it. You violated the law yourself. And that's why, presumably, at the end, we have, okay, now give it over to them, to my clients, Exchange Motors, to inspect, and then you have 60 days to do it. Again, we disagree with that because two and a half years, there's a lot of causation problems with that. You know, what could have happened to the car in two and a half years? But again, this is the basis why we are moving to vacate and to modify the award. We were ready at the time of the arbitration. We went forward with the arbitration. We put forward our exhibits and our testimony, and no evidence of injury was found. And the arbitrator knew this. This is why the conclusion of her award said, okay, give the car over to Exchange Motors so they can find, if there is, any damage to the vehicle. Again, two and a half years later, that's a massive causation problem. But okay, fine. We disagreed with it, and they didn't tell us to tow the car, we'll go get the car. They said produce the car to Exchange Motors. Counsel, I'm reading the arbitration right now on page 32, paragraph 2, under decision. It says, within 60 days of the date, the interim award respondent shall arrange, at its own expense, to have the claimant's used vehicle towed for inspection and comply with the claimant. Okay. Yeah, but that's why we reached out. We're like, we got to coordinate the times, we got to coordinate the dates. Let's do it. And so I did send out an email and said, all right, well, send, let's do it. Let's coordinate a time where we can get the car over to my people's inspection. You would send a tow truck. It's your expense to tow the vehicle. Oh, yes, yes. I'm sorry. I misunderstood what your honor was saying. Yes. But that's why I did the coordination. That's why I sent out the email and said, okay, let's coordinate it. Let's do it. We'll get the tow truck, but we got to coordinate. We got to figure out the date, the time, and I had no response. So I was doing that. I was complying, or my client was complying with the order. Yes, your honor. Thank you. So, but then the other problem is that, again, as you can see very clearly in the arbitration report, she realized that there was no evidence of damage produced. That's why we had to do the examination post-award. Again, that to me is a clear violation on the very face of the award. Why are we doing an arbitration? Why are we producing evidence? Why are we producing exhibits when at the very time of the hearing, trial, arbitration, whatever you want to call it, arbitration, the plaintiff didn't prove her case. And now post-arbitration, she's going to be given an opportunity to prove her case. And even if we were to agree to that, and we don't agree with that, we still complied. She still didn't prove her case. Where's the damage? Where's the injury? If you're going to have a violation of 2L of the Consumer Fraud Act, there has to be a damage. There has to be a violation. From 2001 to 2023, I'm sorry, from 2021 to 2023, no damage has ever been shown. No damage has ever been proven. No damage has ever been substantiated. And yet my client now has violated the Consumer Fraud Act. That is why it is on its face a gross error of law and a manifest violation of the law. Counsel, I understand your argument completely. Assuming that there was a showing, what is your response to the argument that you should have disclosed more about the modification, rebuilt status of the vehicle? The documents that are actually in the record, again, to go back to Justice Albright's question, actually shows on the form, on the actual official form from the Illinois Secretary of State, not only that it's as is, but clear language that this vehicle is modified. How about rebuilt? No, it just says modified. It just says modified. Let me finish. Because it doesn't say rebuilt, is that material? No, because under the Consumer Fraud Act, we are simply are to disclose what's going on with the vehicle. We disclose the modifications to the vehicle. We disclose the CARFAX report to the vehicle. There was a full disclosure, full transparency of everything to this vehicle. Then it ties into what we argued subsequently, which is you have a right to inspect. You have a right to take it out and look at it further. The first part she did, there was clear testimony on that, that she did the first part. She brought with her her boyfriend who knew about Subarus. They inspected the vehicle. My client then said, do you want to take it out or do you want us to take it out to a third party to get it inspected? No. Now we have a statute that says that if an inspection was done and no damage was found or the inspection was refused, no implied warranty of merchantability arises. This now is the crux, another crux of where right on the face of the award, you have a problem. Because you have the statute that says that and you have a finding by the arbitrator that says, claimant, you violated that because you didn't give them an opportunity to inspect. Okay, well, hold on now. Now you've got an inconsistency here in your award. You're finding that you violated that, but you're saying, oh, we're going to get around it post-hearing, post-arbitration after two and a half years. Forget about the causation problems. Go see if there's a defect, if there's a problem. That right in and of itself is a problem right on face of the award. How can you have a violation of the statute, no proving of damage? It says the warranty of merchantability doesn't arise, but somehow you find a violation. That's right on the face of the award. That's clear and convincing evidence. And that's what we've argued from the very beginning. To go to the next point, which is the attorney's fees. Now we have attorney's fees based on a violation by the claimant of the Consumer Fraud Act, clearly stated by the arbitrator. And now there's attorney's fees attached to it. Well, wait a minute. You filed in direct derogation, violation of the arbitration award. You went to court and you filed a lawsuit. You didn't bring an arbitration claim. In fact, you didn't even bring it to us to inspect it or allow us to inspect it to see if we can avoid these litigation costs, these attorney's fees. That never happened. So that didn't happen. You didn't bring it to arbitration right away. You filed a lawsuit. That also didn't happen. So now we have litigation costs that have built up, up to the point of the lawsuit. And then the appeal happens. We win the appeal. It comes back down. We're allowed to go to arbitration. Attorney's fees now have been incurred. But even if we were to allow the attorney's fees, as we argued, to stand, you're still creating a problem that you're saying your attorney's fees are based on your violation of the Consumer Fraud Act. And that still is a problem. And that is right on the face of the award in clear and convincing evidence. How can you base attorney's fees on a violation of the law that the arbitrator herself found you violated by not giving the car over to my clients to inspect? I see the yellow light. I don't know if I have any more time left. Do I have a little bit more time left? You do. A little bit more. Red light is a stop sign. All right. Now, the last part of the argument is, okay, petitioner, plaintiff, sorry, you've lost on every step. There was no as is. There is a warranty of merchantability. There are attorney's fees. So let's say we've lost all of those steps, which I don't believe we have. Then we go to the final step. Attorney's fees. Are they proportionate? Are they reasonable? Why don't we stop there, counsel? You're going to have a chance to do rebuttal. And since you've announced your argument, we'll let you go into that on rebuttal also. Thank you, Your Honor. Any questions from the panel? No, no. And I will mute myself. Thank you. Mr. Piafanov. Thank you, Your Honor. It is indeed the case that they were supposed to pick up the car. They made no attempt to do so. In the record, there is my email to them dated July 8, 2003. It's exhibit five to our response to motion to vacate, in which we bring to their attention that they were in violation of the interim award, which provided that the car needs to be picked up at their expense, which we wanted to do all along. So to the extent that initially counsel stated in open court in his argument that it was our obligation to bring the car in was on its face, on the face, pun intended, false. It was their obligation, as the court correctly pointed out. Now, we do have damages. As part of the record, there is an estimate of $10,000 that will be required to fix the car. Wasn't that not allowed? Oh, one of them was not allowed. One of them was. And moreover, the... Counsel, where is that supported in the record that one of them was? The arbitrator's award? I do not think so. That's all we have. Yep, I know, I know. And that's one of the problems. There is no record. But in any event, the damage was, the damage was they didn't fix the car. Hold on, we're a court of review. That's a major problem. The fact that there is no record, yeah, it's, I recognize it's a major problem. The problem is that they didn't fix the car. And in the record, you have emails, ongoing emails from the Ms. Imsen telling them, please fix my car, please fix my car. And their issue. They refused to fix the car. They wrapped themselves into this, which was illegal. It was found to be illegal, Mr. Fiofanov. Certainly one can see that there was a legitimate argument there. But at some point, does your client say, all right, the arbitrator awarded this to me, my car is available. They would have the right at that point in time to inspect, correct? They were supposed to bring it in, inspect and repair. Which they never did. We wanted them to do it. I sent them a letter, sent them an email saying, you're in violation. It's dated July 8, 2023. We received no response. Mr. Fiofanov, you heard counsel say, Mr. Papoutsis say that he sent an email saying we need to work out the conditions, we need to work this out. Was that letter in response to yours or did you respond to him? He never sent the letter. No email, no nothing. No email, no nothing. Because if he did, we would have of course provided them with the opportunities to pick up the car. No, he never did. They were in violation all along. That's I wrote to them. You guys signed violation. We wanted to bring the car. His argument is at this point that it was an obligation. That was not. It's right there in that word. They were supposed to do it. But if I may pivot to the issue that is of some interest. Mr. Fiofanov, hold on one second. I see the yellow light has come on. Yes, I'm correcting it right now. Okay, just hold on while we're doing this. This is a cross appeal, so you're given the same amount of time that Peter was given before. All right, and did you include the time that we already used then? Krista, was that taken off? Yes, I did. We're at 10 minutes. Okay, you're at 10 minutes, Mr. Fiofanov. Okay, thank you. If I may pivot to the issue that is somewhat interesting, and that is the relationship of the most recent case law that comes from the Supreme Court to the Illinois provision that involves the on the face of the law. It's in the second section of my brief, and I would encourage the court to look into that closely because the recent trend of the law, which involves the lockstep doctrine and all kinds of other esoteric things, is that the courts appear to nullify the common law on the face of the award principle and say that that opens up the Pandora box of re-litigating the case and goes against the principle of arbitration. And the latest cases that I found indicate that the grounds for vacating arbitration awards should be just the ones enumerated in the statute. And of course, Illinois statute is very similar to the Federal Arbitration Act. So I would like to encourage the court to give some serious thought about this because it appears to, after reading of those cases, it appears to me that the on the face of the award principle may be superseded by the recent case law. Any specific case you're referring to? Well, I cited the Supreme Court case. Well, I'm looking forward here and I don't see anything other than, I don't see any recent Illinois Supreme Court cases. Oh, I'm not, I'm not talking, I'm sorry, your honor, I, if I, US Supreme Court, I mean the United States Supreme Court. That's why in my section two of my brief, I was talking about the lockstep doctrine because the idea is that when you have similar provisions of federal and Illinois law, the Illinois Supreme Court does indicate that in most instances, similar provisions in Illinois court should be interpreted in lockstep with the feds. And so given the fact that the feds now said that the factors enumerated in the Federal Arbitration Act are exclusive, because we have to remember there used to be in federal law also some sort of a common law escape valves for arbitration awards. I think that was called manifest disregard of evidence or some language of that nature, which was not the statutory language. And apparently at this point, they're out. Well, I'm still looking for the case, the most recent US Supreme Court case that you've cited. I will tell you, I had to run away because apparently I made a Google and I did not, I did not, I did not cut off my answering machine. So I did not want, but I will tell you the, why don't you look for that on the other side of this, you're going to have five minutes of rebuttal yourself. So yes, sir. Yes, the case that I'm talking about is called Hall Street Associates versus Mattel. It's a 2008 US Supreme Court case. That's the one I found, Hill Street. Yeah, Hall Street. I also would like to, as an aside, I would like to definitely reference the case regarding the, on the face standard, which is contained, the very on the point statement was contained in the Seventh Circuit case, 2019, which is called Banker's Life versus CBRE. I have no idea what that stands for, but it, it, it, it explains Illinois law principle of the, on the face of the word and basically says it only, it only applies to the mathematical calculation errors and disagreements about the application of the law, disagreements about the strengths of evidence. That's all not a proper inquiry for the court of review, which is reviewing the court of review, which is the trial court. And I would like to also mention the standard of review that is involved here because that is, that was something new to me. It's not just merely abuse of discretion. It's the truncated abuse of discretion light, because the Illinois Supreme Court indicated that the standard of review is more limited than the regular abuse of discretion. And I'm not sure if there is even a legal term for that. So in the, in the moment of levity, I called it abuse of that a court of review should reverse, the court of review should reverse the arbitrator's award, which is final. I have, I have nothing to, there is a cross appeal, which is very simple. I have really nothing to add. I usually, I recently in the, in the second district, I said, I have nothing to say. If the panel has questions, I would be happy to answer them. If not, I'll give you a concert, a piano concert. And they took me up on that. I played 30 seconds of piano music for them. I have a few questions before we start the concert. Okay. Excusing the arguments that you are setting those aside. How, if you have no evidence that the car is not working properly. And if we follow counsel's argument, basically, what you should have done in arbitration was to go back to what the law was requiring you to do. And that is to present the car to them, to let them inspect it. So you went to arbitration and you won somehow without ever proving that the car was defective. But the, the, the award was, let's go back to where we should have been before we came to arbitration. How do you respond to that? And then secondly, how did you prevail? Because they didn't disclose that it was modified and rebuilt or under some other fashion? No, those are two separate issues. Okay. So to answer your second question first, their argument was, well, it was sold as is because we... Modified at auction. Yeah. Well, we said it was modified. I prevailed very simply. It's like my former boss at the first district used to say, when everything else fails, read the blank, blankety black statute, except he didn't see, he didn't use to say blank. So we went to the statute and I read the proper, the, the applicable provision from 2L. And it was very clear that what, what they said was not enough. The statute 2L says specifically how to do it, what to say. They didn't do it. Therefore, the, the modified car does not meet the statutory requirements. The statutory requirements were, I think, something like rebuilt or flawed or something like that. I mean, there was specific legal definitions of what exempts a car from the reach of 2L and that was not it. And the arbitrator agreed to it. I accept that. How about the second part? The first part. The first part. Yeah, sure. We presented the evidence how much it would cost to fix the car. She testified about it. The arbitrator said the, the, the ruling was bring the car back. They will look at it and fix it. Because what happened was she was bugging them nonstop. I want you to fix the car under 2L. I want you to fix the car under 2L. And they were saying, no, don't bring it in. You, we sold the car. We are refusing to fix it. That is a violation of warranty if I ever heard one. So we presented the evidence how much it will cost to fix it. And, you know, as far as I'm concerned, the arbitrators split the baby because I, I disagreed with her ruling that my client in any way violated 2L because she was prevented from bringing the car. They told her not to. Understood. I'm not sure I'm going to find that in the record, but I understand your argument. It's not the record. The time limit, your time limit is up and you'll have a chance on a rebuttal here. Mr. Poupsis, you have five minutes. The arbitration agreement by Sabrina Wilkins-Brown was issued on May 8th, 2023. On May 9th, 2023, I did contact counsel to obtain the vehicle. Where's that in the record counsel? It's not in the record because it's an email. We didn't put it in the record because we, it was an email, but what is in the email, what he said was his, his email. And if you look at the email, it's past the 60 days. Is that in the record? That is because it's attached to his, uh, to his, uh, to his, uh, a brief. I'm sorry. You have the site. We're at the record. He cited it, uh, but it isn't, it isn't his appeal. And, um, and, uh, he did, uh, he did cite it, but that. Mr. Poupsis, does his email response, um, reference the chain of the email so that it shows yours from before, or does it say in reference to your email dated May 9th, et cetera? It does not make that reference, but it is in the chain. So it does not know to answer your question directly, your honor. It does not reference it, but it's in the chain. And I actually am seeing it right in front of me right now. I did pull it up because I'm not going to lie to this court, but to answer, uh, uh, uh, justice heddles, uh, question. No, it is not in the record, but it is in the chain, but it does not make reference to my email of May 9th at 1 53, I'm sorry, 1 56 PM. Uh, which by the way, uh, the arbitrator was CC'd on it. So she has it also. And the arbitrage and the N triple a has it. Um, but regardless, let's say we didn't reach out. Okay. You still have 60 days to prove, uh, an injury or a damage to your vehicle. And you're telling me you sent an email after the 60 days and you didn't reach out to me and you're still, you're the one that still has the obligation to prove damage. There still hasn't been a finding or a proof of any damage. Counsel wants to say there were two invoices. No, look at the arbitration award. There was only one, uh, uh, invoice that he tried to put in. And the arbitrator said, you can't substantiate that. I'm not allowing it in. What was the testimony? So there was no physical evidence of any injury to the car before, during or after we have nothing, but during the arbitration, nothing was produced. Also the testimony of Ms. Simpson was, was simply that, uh, I heard a noise in the engine and then the car stopped. Well, I don't know. Did it stop where's the proof of that? Not stopping. So that's it. That was the extent of it. Again, if they proved damage that would trigger a violation of the consumer fraud act under 2L, why have the arbitrators finding, Hey, go give them the car or go get the car. Let's find out what's in the car. If there's any damage two and a half years later, I mean, at that point, we have massive causation problems. And you're telling me that because you couldn't prove it in your arbitration, we're going to find it post arbitration. That is right on the face of the council says, Oh no, the Supreme court case overruled that standard of care or that standard of review. No judge Popejoy cited the hurricane graphics in case and stated that the arbitration award on its face. And I'm reading right from the case law, the, the, the, uh, where a gross error of law or fact appears on the awards face. That is the standard in Illinois. That's under Illinois law. I have found no case federal or otherwise that overrules the hurricane graphics case. That's it. That's my standard. And that was judge Popejoy standard. When we took it up on review in the circuit court on its face, we have stated, where is the finding of physical damage that triggers a violation of the consumer fraud act, even if we were to, uh, uh, agree, which we don't agree, but let's say for the purposes of argument, we agree that there is a warranty, a limited warranty of merchantability, whatever the scope of it is. Okay. Well, you still got to trigger it. You still have to find a violation to trigger it. That's why 2L is there. Why consumer fraud is there. There was no trigger. If there was nothing proved, there cannot be a violation of the Illinois consumer fraud act. In fact, that's throughout all of Illinois law that I've been able to find on it. Uh, and that's why it's patent right on its face that that's a, that's clear and convincing evidence that the arbitration award is a gross, uh, error of law. You cannot find a violation where there is no violation. And then you tell me post arbitration, go find a violation. And then they still don't abide by it. And then send me an email after the 60 days. Oh, you didn't bring it in or you're now you're in violation. That's inappropriate. That's our basis. Thank you, your honors. Thank you. Uh, any questions? No, no. This is over. All right. Uh, Mr. Piofanoff, your response, five minutes. Well, okay. So counsel in his initial presentation is represented the record to the court by saying it was our obligation to bring the car. He was called on it and it turns out it was their obligation. Now he doubles down and claims that, uh, he sent me an email, which is not part of the record. My client is bugging me about fixing the car. If I got an email from him, we would have been there talking to him about bringing the car that very day. The part of the record, the email that I sent to him, which is not part of the record is exhibit five motion in the record, in the appellate court record, it says something, see a number, not exhibit five from the trial, not from the record. Yeah, it's part of the record. I cannot find it right now, but I will be able to do it over the, over the, over the, over the, uh, uh, during the presentation. I only have it. I only have in front of me, the, um, the actual filing, which I filed in the court below. But in any event, I will, I will give you the exact citation. It says as of today, July 8th, your client is in violation of the interim award. Then we followed up next, uh, uh, next 10 days. As of today, June 19th, your client is in violation of attorney fee provision of the arbitration. Mr. Fiofanov, on that email that you are reading to us, who all is it addressed to? Uh, it is addressed to, uh, counsel and me. Not AAA, not anybody else on the, on the string that you responded or you sent an email to, it's only you and counsel and not your client, not anyone else? Yes, it was the communication between the lawyers. I was trying to get him to bring the car back. My question though, was pretty clear. Was anyone else on that email other than you and the other attorney? As attorney and my own mail as a, as a cop. Okay. That's it. Just, just him and him and me. That's it. It was a communication between the lawyers. We were trying to get him to follow the order and it was not, and it was not part of the chain. It was not part of a response to his email. That was me realizing that 60 days out and they were in violation and I was trying to resolve it post, um, post 60 days without going to court. Anything else, Mr. Fiofanov? Uh, no. I think the issues are relatively clear. And did you, you're asking for, uh, your cross appeal, is it the fees that you asked for from, uh, judge, uh, Popejoy, um, they are included, they were presented to him and they're included as part of the record? Yes, they were. They are part of the record. There is a few petition, which is also attached, uh, to, as an, as an exhibit to the response. There was a few petition. Um, judge Popejoy is almost like a personal friend. I, I feel bad about complaining about him, but he misunderstood my argument. He, he thought we were objecting to counsel's filing under rule 137, which we were not. He cited the case law and therefore it was not sanctionable. Uh, our argument was that, uh, the underlying case was a consumer fraud case and therefore, uh, under the principle of dilution, which I had to find out, uh, uh, by reading through the cases, uh, the consumer fraud consumer cases where the fee shifting award is available, do not stop at an arbitration award or the judgment or anything like that. They stop when the collection is over, therefore it should have been, it should have been awarded, but he misunderstood the issue. Thank you. I don't have any further questions, uh, panel members. No. All right. Um, gentlemen, thank you very much for your, uh, spirited arguments. Uh, we will take this case under advisement and issue, um, an order, um, in due time or due course, excuse me.